IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANICE MEADEN and JOHN MEADEN III,<br>Residents of the State of California, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | NO: 12 – CV- 3534 |
| v. | )<br>) | |
| THOMAS F. MEADEN, a Resident of the<br>State of Illinois, and MEADEN PRECISION<br>MACHINED PRODUCTS COMPANY,<br>an Illinois Corporation, | )<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFFS' COMPLAINT

THOMAS F. MEADEN and MEADEN PRECISION MACHINED PRODUCTS COMPANY, by and through their attorneys, WILLIAMS MONTGOMERY & JOHN LTD., and for their Answer to Plaintiffs' Complaint, state:

### JURISDICTION

1.      Janice is a citizen of the State of California.

**ANSWER:** The facts stated in Paragraph 1 of Plaintiffs' Complaint are correct.

2.      Jay is a citizen of the State of California.

**ANSWER:** The facts stated in Paragraph 2 of Plaintiffs' Complaint are correct.

3.      Tom is a citizen of the State of Illinois

**ANSWER:** The facts stated in Paragraph 3 of Plaintiffs' Complaint are correct.

4.      MPMP is a corporation incorporated under the laws of the State of Illinois, with its principal place of business in the State of Illinois.

**ANSWER:** The facts stated in Paragraph 4 of Plaintiffs' Complaint are correct.

5.     The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000; therefore, pursuant to 28 U.S.C. §1332(a), this Court has jurisdiction.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegation contained in paragraph 5 of Plaintiffs' Complaint, but demand strict proof thereof.

## COUNT I – BREACH OF STOCK REDEMPTION AGREEMENT (JANICE)

1 – 5.   Janice adopts and realleges paragraphs 1 through 5 as paragraphs 1 through 5 of Count I.

**ANSWER:** Defendants restate and reassert their answers to paragraphs 1 through 5 as paragraphs 1 through 5 of Count I.

6.     Janice and Jay are minority shareholders in MPMP, each owning 393 1/3 shares.

**ANSWER:** The facts stated in Paragraph 6 of Plaintiffs' Complaint are correct.

7.     Tom is the majority shareholder in MPMP, owning 4,476 1/3 shares.

**ANSWER:** The facts stated in Paragraph 7 of Plaintiffs' Complaint are correct.

8.     On or about December 15, 1989, Janice, Jay, Tom and MPMP entered into a stock repurchase agreement (the "Agreement"), a true and correct copy of which is attached and incorporated by reference herein as Exhibit A.

**ANSWER:** Defendants state that that the Agreement attached as Exhibit A speaks for itself and is the best evidence of its contents and, therefore, any and all allegations inconsistent therewith are denied.

9.     Pursuant to the terms of the Agreement, specifically section 1. Purchase Obligation upon Death, MPMP and Tom agreed to repurchase the shares of MPMP stock owned

by Janice and Jay, respectively, on the death of their father John A. Meaden, Jr. ("Dad") pursuant to the price and other terms set forth in the Agreement.

**ANSWER:** Defendants state that the Agreement attached as Exhibit A is an integrated document and must be considered in its entirety, speaks for itself and is the best evidence of its contents, and therefore, any and all allegations inconsistent therewith are denied.

10.    Dad died on October 8, 2009. Section 8.1 of the Agreement provide, "the closing shall take place 180 days following the death of John A. Meaden, Jr. [Dad];" however, the closing did not occur on April 8, 2010, and has yet to occur.

**ANSWER:** Defendants state that John A. Meaden, Jr. died on October 8, 2009. Defendants state that the Agreement attached as Exhibit A is an integrated document and must be considered in its entirety, it speaks for itself and is the best evidence of its contents, and therefore, any and all allegations inconsistent therewith are denied. Defendants state that the closing did not occur on April 8, 2010, and has yet to occur.

11.    On or about February 24, 2012, Janice and Jay sent a written request (a true and correct copy of which is attached and incorporated by reference herein as Exhibit B) for purchase of their stock by Tom and MPMP.

**ANSWER:** Defendants state that the letter attached as Exhibit B speaks for itself and is the best evidence of its contents, and therefore, any and all allegations inconsistent therewith are denied.

12.    On or about March 8, 2012, Tom and MPMP refused to purchase the stock allegedly because Janice and Jay "breached their obligations by refusing to sell." A true and correct copy of this letter is attached and incorporated by reference herein as Exhibit C.

**ANSWER:** Defendants state that the letter attached as Exhibit C speaks for itself and is the best evidence of its contents, and therefore, any and all allegations inconsistent therewith are denied. Further answering, Janice and Jay did in fact breach their obligations and refused to sell their shares of stock in MPMP.

13. Janice and Jay have fully performed all conditions, obligations, and duties under the terms of the Agreement. Despite repeated demands, Tom and MPMP have willfully and vexatiously failed and refused to repurchase Janice's stock.

**ANSWER:** Defendants deny the allegations contained in paragraph 13 of Plaintiffs' Complaint, and each of them.

14. The value of the stock has been agreed to between Tom, MPMP, Jay, and Janice based upon the January 31, 2010 Stock Purchase Agreement Valuation, a copy of which is attached and incorporated by reference herein as Exhibit D.

**ANSWER:** Defendants deny that Jay and Janice agreed to the value of the stock based upon the valuation attached as Exhibit D and, in fact, Jay and Janice steadfastly claimed the value of the stock was greater and also were unwilling to sell their stock in accordance with the Stock Purchase Agreement until Tom or MPMP met Jay and Janice's unreasonable and baseless demands in regard to other claims. Defendants deny the remaining allegations contained in paragraph 14 of Plaintiffs' Complaint.

15. With accrued interest through March 8, 2012, Tom and MPMP are indebted to Janice in the sum of $242,040 and interest continues to accrue at a rate of 9 percent per annum.

**ANSWER:** Defendants deny the allegations contained in paragraph 15 of Plaintiffs' Complaint.

4

WHEREFORE, Defendants Thomas F. Meaden and Meaden Precision Machined Products Company deny that Plaintiffs Janice Meaden and John A. Meaden III are entitled to the relief sought in Plaintiffs' Complaint, or any relief whatsoever, and respectfully request that this Court grant judgment in their favor and against Plaintiffs on the Complaint with their costs awarded and grant such other and further relief as this Court deems just and proper.

## COUNT II – BREACH OF STOCK REDEMPTION AGREEMENT (JAY)

1 – 14. Jay adopts and realleges paragraphs 1 through 14 of Count I as paragraphs 1 through 14 of Count II.

**ANSWER:** Defendants restate and reassert their answers to paragraphs 1 through 14 as paragraphs 1 through 14 of Count II.

15.    With accrued interest through March 8, 2012, Tom and MPMP are indebted to Jay in the sum of $242,040 and interest continues to accrue at a rate of 9 percent per annum.

**ANSWER:** Defendants deny the allegations contained in paragraph 15 of Plaintiffs' Complaint.

WHEREFORE, Defendants Thomas F. Meaden and Meaden Precision Machined Products deny that Plaintiffs Janice Meaden and John A. Meadn III are entitled to the relief sought in Plaintiffs' Complaint, or any relief whatsoever, and respectfully prays that this Court grant judgment in their favor and against Plaintiffs on the Complaint with their costs awarded and grant such other and further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

Defendants THOMAS F. MEADEN and MEADEN PRECISION MACHINED PRODUCTS COMPANY, by and through its attorneys, WILLIAMS MONTGOMERY & JOHN

LTD, in the alternative and without prejudice to any of the foregoing answers, sets forth the following Affirmative Defenses to Plaintiffs' Complaint:

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands, inequitable conduct, waiver, estoppel and/or laches. Defendants tendered an offer to purchase Plaintiffs' shares at a value determined in accordance with the valuation calculation set forth in the Stock Purchase Agreement. In fact, Defendants retained Maloney & Company Ltd., MPMP's outside accountant, to value the shares in accordance with the Stock Purchase Agreement. Notwithstanding Defendants' offer to purchase Plaintiffs' shares, Plaintiffs' rejected the offer and refused to sell, claiming that their shares were undervalued and making unreasonable and baseless demands in regard to other claims. Accordingly, Plaintiffs are precluded from having their shares purchased or recovering the value of those shares.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs are precluded from recovering interest on the value of their shares. Defendants tendered an offer to purchase Plaintiffs' shares at a value determined in accordance with the valuation calculation set forth in the Stock Purchase Agreement. In fact, Defendants retained Maloney & Company Ltd., MPMP's outside accountant, to value the shares in accordance with the Stock Purchase Agreement. Notwithstanding Defendants' offer to purchase Plaintiffs' shares, Plaintiffs' rejected the offer and refused to sell, claiming that their shares were undervalued and making unreasonable and baseless demands in regard to other claims. Accordingly, Plaintiffs are precluded from recovering interest on the value of their shares because of their own refusal to sell.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by virtue of the applicable statute of limitations.

## RESERVATION

Defendants reserve the right to assert any other affirmative defenses and/or claims that may come to light during the course of discovery.

**WHEREFORE**, Defendants Thomas F. Meaden and Meaden Precision Machined Products Company, deny that Plaintiffs Janice Meaden and John Meaden III are entitled to the relief sought in Plaintiffs' Complaint, or any relief whatsoever, and respectfully request that this Court grant judgment in their favor and against Plaintiffs on the Complaint with their costs awarded and grant such other and further relief as this Court deems just and proper.

## DEFENDANTS' COUNTERCLAIMS

Defendants THOMAS F. MEADEN and MEADEN PRECISION MACHINED PRODUCTS COMPANY, by and through their attorneys, WILLIAMS MONTGOMERY & JOHN LTD., and for its Counterclaims against Plaintiffs JANICE MEADEN and JOHN A. MEADEN, III, state as follows:

1.     Counterclaimant Thomas F. Meaden ("Tom") is a citizen of the State of Illinois and is President and majority shareholder of MPMP. Tom is the oldest brother of Janice and Jay.

2.     Counterclaimant Meaden Precision Machined Products Company ("MPMP") is a corporation organized under laws of the State of Illinois and with its principal place of business at 16W210 83rd Street, Burr Ridge, Illinois.

3.     Counterdefendant Janice Meaden ("Janice") is a citizen of the state of California.

4.     Counterdefendant John A. Meaden, III ("Jay") is a citizen of the State of California.

7

5.     This Court has jurisdiction over Plaintiffs Janice Meaden and Jay Meaden's claims that arise under the laws of the United States pursuant to 28 U.S.C. § 1332(a).

6.     This Court has supplemental jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1367.

## FACTUAL BACKGROUND

7.     MPMP, originally known as Meaden Screw Machine Products (hereinafter referred to only as "MPMP"), was founded in or about 1941 as a joint venture between John A. Meaden and his son, John A. Meaden, Jr. ("John Jr."). In ensuing years, MPMP was incorporated under Illinois law and was primarily owned and controlled by John Jr. MPMP currently employs approximately 80 people.

8.     John Jr. was married to Mary Floyd Meaden ("Mary"), and they had three children, Counterclaimant, Thomas Floyd Meaden, and Counterdefendants, John A. Meaden, III and Janice Meaden. The Meaden children are collectively referred to as the "Meaden Siblings."

9.     The following claims relate to John Jr.'s estate plan and gifts made to the Meaden Siblings.

### Burr Ridge Property and the Land Trust

10.     In the late 1970's, John A. Meaden, Jr. decided to move MPMP from Chicago to Burr Ridge, Illinois and construct a building for the business. To do so, he made his first of several gifts to his children by arranging to have the Burr Ridge land and building placed in a land trust with his children as beneficiaries.

11.     In or about 1977, MPMP loaned the Meaden Siblings approximately $207,000 so that they could purchase a piece of property known as:

> Lot 8 in the plat of Hinsdale Industrial Park, Unit Two, being a subdivision of part
> of part of the Northeast quarter of Section 35, Township 38 North, Range 11, East

of the Third Principal Meridian, according to the Plat thereof recorded September 19, 1969, as Document R69-42012, in Du Page County, Illinois, subject to covenants, conditions and restrictions of record, and restriction and other matters set forth in "Deed Restrictions" Hinsdale Industrial Park, hereby incorporated by reference

commonly known as 16W210 83rd Street, Burr Ridge, Illinois 60527 (the "Burr Ridge Property").

12.     The Burr Ridge property is held in Land Trust No. 2729 with Chicago Title Land Trust as the successor trustee to Cicero State Bank (the "Land Trust"). A true and correct copy of the Land Trust Agreement is attached hereto and incorporated herein as Exhibit A.

13.     Janice and Jay each own a one-third (1/3) beneficial interest in the Land Trust. Tom holds a two-ninth (2/9) beneficial interest in the Land Trust. Tom's children hold a one-ninth (1/9) beneficial interest in the Land Trust.

14.     The Meaden Siblings hold the power of direction over the Land Trust. The trustee is authorized to act at the direction of the majority of the holders. Until 2011, Janice and Jay delegated their power of direction over the day to day management of the Land Trust to Tom and approved and ratified Tom's management.

15.     In 1977, the Meaden Siblings directed the trustee to execute a $600,000 mortgage in order to construct a manufacturing facility for MPMP on the Burr Ridge Property.

16.     On March 1, 1978, MPMP entered into a sixteen (16) year lease with the Land Trust commencing on May 15, 1979.

17.     In 1979, MPMP relocated its operations to the Burr Ridge property.

18.     On June 11, 1993, the Land Trust executed an Extension of Lease with MPMP to extend MPMP's lease on the Burr Ridge property to May 15, 2010.

19.     On May 15, 2010, MPMP's lease with the Land Trust for the Burr Ridge property terminated, and MPMP has leased the property on a month-to-month basis since that time.

20.     As a result of MPMP's lease with the Land Trust for the Burr Ridge Property and payment of rent at an above market price, the Meaden Siblings have received a consistent, lucrative stream of rental income as beneficiaries of the Land Trust.

### John Jr.'s Estate Plan and Succession of MPMP

21.     By 1989, Tom had followed in his grandfather and father's footsteps and was working in the business, MPMP, and Janice and Jay had moved to California where Jay worked as a divorce attorney and Janice as a dance instructor.

22.     In 1989, at the age of seventy-five (75), John Jr. decided to make further gifts to his children.

23.     John Jr. consulted and relied on his attorney, Earnest Palmer ("Mr. Palmer"), for expertise and advice to create an estate plan that achieved his goals.

24.     Mr. Palmer devised a complex and convoluted plan that, because it was funded with universal life insurance policies, became largely unworkable and obsolete.

25.     Overall, the thrust of the estate plan was that Tom would receive the business, MPMP, and Janice and Jay would share the remainder of their parents' estates.

#### A. John Jr.'s Will and Gifts of MPMP Stock

26.     To effectuate his estate plan, John Jr. executed a Last Will and Testament. Under John Jr.'s will, all tangible personal property was to be split between the Meaden Siblings. The remainder of his estate was to pass through The John A. Meaden, Jr. Life Insurance Trust Dated May 25, 1970 ("John Jr. Life Insurance Trust"). A true and correct copy of the John A. Meaden, Jr. Life Insurance Trust is attached hereto and incorporated herein as Exhibit B.

27.     Under the John Jr. Life Insurance Trust Tom was to receive nothing and the remainder of the Life Insurance Trust was to ultimately pass to Janice and Jay in equal shares.

28.    Prior to and until the end of 1989, the Meaden Siblings received roughly equal gifts of MPMP stock.

29.    As of November 1989, Tom had 1,182 shares, Janice had 870 shares, Jay had 994 shares. At this time, John Jr. also had 3,141 shares.

30.    In December 1989, John Jr. decided to gift most of his remaining shares of MPMP stock to his children. Tom received 2,314 shares and Janice received 312 shares.

31.    After John Jr.'s gift of most of his remaining shares, Tom had 3500 shares, Janice had 1182 shares and Jay had 994 shares. Thus, even though Tom received most of his father's shares, Janice and Jay were still substantial holders of MPMP stock.

32.    Further, despite John Jr.'s gift of most of his shares of MPMP stock, John Jr. remained employed with MPMP until 2003. During that time, John Jr. collected approximately $1,322,809.16 in salary from MPMP, which ultimately increased the size of his estate at the time of his death.

### B. Irrevocable Insurance Trusts

33.    As a further gift to Janice and Jay, John Jr., Mary and Tom each established an irrevocable insurance trust in which each trust would hold an undivided one-third (1/3) interest in a universal life insurance policy with a face value of $1.25 million.   A true and correct copy of the Irrevocable Insurance Trust Agreement(s) Dated November 17, 1989 is attached hereto and incorporated herein as group Exhibit C.

34.    If and when additional premiums were paid, they would constitute an additional gift, and under Crummey Trust powers, Janice and Jay would have an opportunity to receive a certain amount of that gift outside of the trust. Janice and Jay declined to exercise this right, thus making the gifts subject to the trust distribution conditions.

35.     Between 1989 and 1995, Tom, John Jr. and Mary made annual gifts to their respective Irrevocable Insurance Trusts. Every year Janice and Jay received an annual statement reflecting these gifts, and a notice informing them of their right to withdraw certain amounts. A true and correct copy of an annual statement and notice is attached hereto and incorporated herein as Exhibit D.

### C. Stock Purchase Agreement

36.     On December 15, 1989, Tom, in his capacity as President of MPMP, and the Meaden Siblings individually executed the Stock Purchase Agreement Dated December 15, 1989 (the "Stock Purchase Agreement"). A true and correct copy of the Stock Purchase Agreement is attached hereto and incorporated herein as Exhibit E.

37.     The Stock Purchase Agreement was a mutual obligation requiring that on the death of John Jr., Janice and Jay "shall sell" and Tom and MPMP "shall purchase" certain shares of MPMP stock owned by Janice and Jay and subject to the Stock Purchase Agreement.

38.     The Stock Purchase Agreement provided a detailed and specific method for calculating the fair value of the shares at the time they were to be purchased.

39.     In order to pay for the purchase of the shares, MPMP initially owned life insurance on the life of John Jr. Under the Stock Purchase Agreement, the proceeds of the life insurance policy were to be used to purchase the shares. In the event that the proceeds were not sufficient to pay for the shares in full, the balance was to be paid in ten annual installments with an interest rate of 9% per annum.

40.     Following the death of John Jr., Tom offered to purchase the certain shares of Janice and Jay that were subject to the Stock Purchase Agreement at a value calculated in

12

accordance with the method outlined in the Stock Purchase Agreement. Janice and Jay refused to sell their shares in violation of their obligation under the Stock Purchase Agreement.

### *D. Ernie Outline*

41.     To further describe John Jr.'s estate plan, Mr. Palmer drafted the "Agreement Dated December 11, 1989" (the "Ernie Outline"). The Ernie Outline is signed by the Meaden Siblings in their individual capacities and describes a number of gratuitous gifts that John Jr., Mary and Tom will make in the future. A true and correct copy of the Ernie Outline is attached hereto and incorporated herein as Exhibit F.

42.     Many of the future gifts set forth in the Ernie Outline were to be made to Janice and Jay.

43.     Janice and Jay made no promises, did not act or forbear from acting, nor gave up anything of value in exchange for the future gifts described in the Ernie Outline.

44.     The Ernie Outline does not reflect that Tom received anything of value in exchange for his making of the gifts set forth in the Ernie Outline.

### **The Estate Plan Becomes Unworkable**

45.     A portion of John Jr.'s estate plan was driven by use of universal life insurance policies funded through payments that emanated from MPMP

46.     By late 1996, the universal life insurance policies – through a combination of John Jr. living into his 80s, a downturn in MPMP's business, and a decrease in interest rates – became unaffordable and impractical.

47.     As a result, the universal life insurance policies were cashed in, with the consent and approval of Janice and Jay, and Janice and Jay received the proceeds. A true and correct

copy of the May 7, 2001 letter to Janice and Jay, the April 12, 2003 letter to Janice and the March 17, 2004 letter to Jay are attached hereto and incorporated herein as group Exhibit G.

48.     Accordingly, Tom did not make any further payment to his Irrevocable Insurance Trust after 1995 and John Jr. and Mary stopped making payments to their Irrevocable Insurance Trusts after 2001.

### The Present Dispute

49.     Prior to Janice and Jay's commencement of this action, they made a number of demands on Tom and MPMP for various claims, including personal claims against Tom.

50.     To extract a settlement with Tom on their personal claims, Janice and Jay have refused, on behalf of the Land Trust, to enter into a new lease with MPMP, forcing the business to move, and thereby damaging the Land trust and the MPMP.

### COUNT I – DECLARATORY JUDGMENT THAT JANICE AND JAY WAIVED ANY CLAIM ARISING UNDER THE STOCK PURCHASE AGREEMENT

51.     Counterclaimants    incorporate    by    reference    paragraphs    1-50    of    their Counterclaims as if fully set forth herein.

52.     The present case, filed by Janice and Jay, asserts claims against Tom and MPMP arising out of the Stock Purchase Agreement.  Accordingly, an actual controversy exists.

53.     The Stock Purchase Agreement entered into by the Meaden Siblings obligates Janice and Jay to sell and MPMP and Tom to purchase certain of Janice and Jay's MPMP shares at the time of John, Jr.'s death.

54.     Exhibit A to the Stock Purchase Agreement provides a detailed and specific method for determining the fair value of the shares at the time they were to be purchased.

55.     John Jr. passed away on October 8, 2009.

14

56.     At the time of John, Jr.'s death, the only MPMP shares that were owned by Janice and Jay were subject to the Stock Purchase Agreement.

57.     MPMP retained Maloney & Company, Ltd., MPMP's outside accounting firm, to perform the share valuation in accordance with the method set forth in the Stock Purchase Agreement.

58.     Maloney & Company determined that the Fair Market value of Janice and Jay's shares that were subject to the Stock Purchase Agreement was $531.09 per share. A true and correct copy of the Maloney & Company Valuation is attached hereto and incorporated herein as Exhibit H.

59.     Tom, individually and on behalf of MPMP, in accordance with the obligations under the Stock Purchase Agreement, offered to purchase Janice and Jay's outstanding MPMP shares for $531 per share.

60.     Janice and Jay, in material breach of the Stock Purchase Agreement, rejected Tom's offer and refused to sell their shares, claiming that the shares were undervalued, while making other baseless claims and demands.

61.     As a result of Janice and Jay's refusal to sell their shares at the fair value price determined by Maloney & Company in accordance with the method of the Stock Purchase Agreement, the very price they now claim in to be in agreement with, Janice and Jay waived any claim arising under the Stock Purchase Agreement.

WHEREFORE, Counterclaimants Thomas F. Meaden and Meaden Precision Machined Products Company respectfully request that this Court enter a declaratory judgment in their favor and against counterdefendants Janice Meaden and John A. Meaden, III declaring that Janice and Jay breached the Stock Purchase Agreement and waived any claim arising thereunder.

## COUNT II – DECLARATORY JUDGMENT THAT THE IRREVOCABLE INSURANCE TRUST AGREEMENTS HAVE BEEN TERMINATED

62.     Counterclaimants incorporate by reference paragraphs 1-50 of their Counterclaims as if fully set forth herein.

63.     Outside of this present litigation, Janice and Jay have made certain demands and claims against Tom with respect to the Irrevocable Insurance Trusts that, together, held an undivided interest in a universal life insurance policy in the name of John Jr. Accordingly, an actual controversy exists.

64.     Tom, John Jr. and Mary created individual Irrevocable Insurance Trusts and each executed an Irrevocable Insurance Trust Agreement.

65.     John Jr., Mary and Tom made annual gifts to their respective Irrevocable Insurance Trusts for several years.

66.     By late 1996, the universal life insurance policies – through a combination of John Jr. living into his 80s, a downturn in MPMP's business, and a decrease in interest rates – became unaffordable and impractical

67.     Accordingly, Tom ceased making his yearly gift to his trust in 1995 and John Jr. and Mary ceased making their annual gifts to their respective trusts in 2001.

68.     On or about February 12, 2001, the trustee surrendered the universal life insurance policy in the name of John A. Meaden, Jr. that was owned by the Irrevocable Insurance Trusts of Tom, John Jr. and Mary.

69.     The universal life insurance policy was surrendered with the consent and approval of Janice and Jay and Janice and Jay received the proceeds.

70.     Accordingly, the Irrevocable Insurance Trust Agreements are terminated. Plaintiffs are thus barred from asserting any claims arising thereunder.

16

71.     Moreover, the Irrevocable Insurance Trusts were funded through gifts and there is no enforceable obligation on Tom, John Jr., or Mary to continue making future gifts to their respective Irrevocable Insurance Trusts.

WHEREFORE, Counterclaimants Thomas F. Meaden and Meaden Precision Machined Products respectfully request that this Court enter a declaratory judgment in their favor and against Counterdefendants Janice Meaden and John A. Meaden III declaring that the Irrevocable Insurance Trusts of John Jr., Mary and Tom are terminated and that Janice and Jay are barred from making any claims thereunder.

## COUNT III – DECLARATORY JUDGMENT THAT THE ERNIE OUTLINE IS NOT AN ENFORCEABLE AGREEMENT

72.     Counterclaimants incorporate by reference paragraphs 1-50 of their Counterclaims as if fully set forth herein.

73.     The Ernie Outline describes a number of gratuitous gifts that John Jr., Mary and Tom will make in the future. Outside of this present litigation, Janice and Jay have made demands on Tom in an effort to force him to make certain of the gifts described in the Ernie Outline. Accordingly, an actual controversy exists.

74.     The Ernie Outline does not require Janice or Jay to give up anything of value or otherwise act or forbear from acting and, therefore, by definition, Janice and Jay have provided no consideration for the Ernie Outline. Accordingly, the Ernie Outline represents nothing more than a series of gratuitous promises to make future gifts.

75.     The mere lack of consideration for the gratuitous promises set forth in the Ernie Outline renders it unenforceable as an agreement. Accordingly, Plaintiffs are barred from asserting any claims arising under the Ernie Outline.

17

76.   The Ernie Outline is further unenforceable because Janice and Jay have ratified the conduct that now forms the bases for a number of the claims that Janice and Jay have made against Tom and MPMP.

77.   Janice and Jay ratified the trustee's decision to surrender the life insurance policies by consenting and approving to the transactions and receiving the proceeds from those policies.

78.   The Ernie Outline is further unenforceable because Janice and Jay have waived any claims arising thereunder.

79.   Janice and Jay received annual reports, were informed of all transactions, and were otherwise kept knowledgeable of all business relating to the items set forth in the Ernie Outline. Janice and Jay, for over 20 years, never objected to or complained of any action that was taken with respect to the promises under the Ernie Outline. Accordingly, by their own conduct, Janice and Jay waived any claims arising under the Ernie Outline.

80.   Plaintiffs are barred from pursuing alleged claims that arise out of an unenforceable agreement between the parties.

81.   A declaration by this Court that the Ernie Outline is unenforceable will terminate all or a substantial portion of Janice and Jay's claims against Tom and MPMP.

WHEREFORE, Counterclaimants Thomas F. Meaden and Meaden Precision Machined Products Company respectfully request that this Court enter a declaratory judgment in their favor and against Counterdefendants Janice Meaden and John A. Meaden III declaring that the Ernie Outline is unenforceable for lack of consideration and/or that any claims thereunder are waived and/or barred by ratification.

**COUNT IV – DECLARATORY JUDGMENT THAT TOM DID NOT BREACH THE ERNIE OUTLINE**

18

82.     Counterclaimants incorporate by reference paragraphs 1-50 of their Counterclaims as if fully set forth herein.

83.     Outside of this present litigation, Janice and Jay have made demands on Tom in an effort to force him to make certain gifts described in the Ernie Outline. Accordingly, an actual controversy exists.

84.     Because the Ernie Outline lacks consideration, it is not an enforceable agreement between the parties.

85.     The Ernie Outline merely describes the estate plan of John Jr. and sets forth a series of gratuitous promises that John Jr., Mary, and Tom will make in the future. As such, Tom is under no obligation to make any of the gratuitous future gifts set forth in the Ernie Outline.

86.     Moreover, as a result of the circumstances that have unfolded since the Ernie Outline was drafted, many, if not all, of the future gifts described in the Ernie Outline are unwarranted.

87.     The following gifts have been rendered unwarranted:

        a.      The life insurance policies in the name of John Jr., as referred to in paragraphs 1 and 3, were cashed in, with the consent and approval of Janice and Jay and all of the proceeds were distributed between Janice and Jay.

        b.      The deferred compensation, as referred to in paragraph 5, was not warranted because John Jr. continued to work at MPMP well after the three year period set forth in paragraph 5.

19

      c.      New Plastic Welding Products, Inc. was dissolved in 2004 and therefore there was no debt for Tom to pay and no shares of stock for Tom to purchase as referred to in paragraphs 8 and 9.

      d.      Janice and Jay never incurred any travel expenses, as referred to in paragraph 15, that were not paid for.

88.      Accordingly, Tom cannot be in breach of the Ernie Outline because (1) it is not an enforceable agreement between the parties and (2) many of the gifts described therein are unwarranted.

**WHEREFORE** Counterclaimants Tom Meaden and Meaden Precision Machined Products respectfully requests that this Court enter a declaratory judgment in their favor and against Counterdefendants Janice Meaden and John A. Meaden III declaring that Tom Meaden did not breach the Ernie Outline.

## COUNT V – DECLARATORY JUDGMENT THAT CLAIMS IN REGARD TO LAND IMPROVEMENT AND MAINTENANCE FEES HAVE BEEN WAIVED

89.      Counterclaimants incorporate by reference paragraphs 1-50 of their Counterclaims as if fully set forth herein.

90.      During the last thirty-two (32) years, certain repairs and capital improvements have been made to the Burr Ridge property and were paid for by the Land Trust.

91.      Amongst the many demands that Janice and Jay have made on Tom and MPMP outside of this present litigation, Janice and Jay claim MPMP should have paid for the repairs and capital improvements made to the Burr Ridge property and claim that they are entitled to the amounts paid by the Land Trust for those repairs and capital improvements, plus 12% interest. Accordingly, an actual controversy exists.

20

92.     Each year, over the last thirty-two (32) years, Janice and Jay received an annual report on the Land Trust which showed the rents received and the expenses paid. The reports specifically described the nature of the various expenses, provided a substantiation of the expenses, and demonstrated the fact that the Land Trust was paying the expenses. A true and correct copy of an Annual Report is attached hereto and incorporated herein as Exhibit I.

93.     Additionally, over the last thirty-two (32) years, the Land Trust refinanced its mortgage in the Burr Ridge property and used equity from the property to pay for improvements and repairs, as well as equity to Janice, Jay, and Tom as beneficiaries of the Land Trust.

94.     Each of the refinancing transactions reflected that certain funds were being used to make improvements and repairs to the property. Janice and Jay authorized and ratified the payments for each of the repairs and improvements. A true and correct copy of the "Land Trust 155" Authorization to Disburse Loan Proceeds is attached hereto and incorporated herein as Exhibit I.

95.     The details of these transactions and payments were also set forth in the annual reports that Janice and Jay received.

96.     Because Janice and Jay ratified all payments made by the Land Trust for repairs and capital improvements, Janice and Jay are now barred from pursuing said claim as a result of waiver, ratification, estoppel, and/or laches.

WHEREOFRE Counterclaimants Thomas F. Meaden and Meaden Precision Machined Products Company respectfully request that this Court enter a declaratory judgment in their favor and against Counterdefendants Janice Meaden and John A. Meaden III, declaring that a claim for the amounts paid by the Land Trust for capital improvements and repairs to the property is waived and/or barred by ratification and/or barred by estoppel and/or barred by laches.

## COUNT VI – BREACH OF FIDUCIARY DUTY AS HOLDER OF POWER OF DIRECTION AGAINST JANICE MEADEN AND JAY MEADEN

97.     Counterclaimants incorporate by reference paragraphs 1-50 of their Counterclaims as if fully set forth herein.

98.     At all times relevant to this action, there was in effect the Illinois Land Trust Fiduciary Duties Act, 765 ILCS 435/1 et seq.

99.     Section 15 of the Illinois Land Trust Fiduciary Duties Act provides:

The power of direction, unless provided otherwise in the land trust agreement, is conferred upon the holders thereof for the use and benefit of all of the holders of the beneficial interest in the land trust. In exercising the power of direction, the holders are presumed to act in a fiduciary capacity for the benefit of all holders of the beneficial interests in the trust, unless otherwise provided in the land trust agreement. The beneficial interest shall be indefeasible and the power of direction shall not be exercised to alter, amend, revoke, terminate, defeat, or otherwise affect of change the enjoyment of any beneficial interest. 765 ILCS 435/15.

100.    Janice and Jay as holders of the power of direction under the Land Trust Agreement owed, and continued to owe, fiduciary duties to all of the beneficiaries of the Land Trust, including Tom, in accordance with Section 15 of the Illinois Land Trust Fiduciary Duties Act. These duties include, but are not limited to, the duties of utmost candor, care, loyalty and good faith.

101.    Janice and Jay have completely usurped their power as the majority of the holders of the power of direction and used their position as the majority to place their personal interests above and to the detriment of the remaining beneficiary of the Land Trust, namely Tom.

102.    MPMP currently operates out of the Manufacturing Facility on the Burr Ridge Property which is held in the Land Trust.

103.    The Manufacturing Facility was constructed on the Burr Ridge property specifically for housing the operations of MPMP.

104.   MPMP executed a lease with the Land Trust in 1978, which commenced in 1979. Under the lease, MPMP pays the taxes, insurance and certain repairs and improvements on the property. Since that time, MPMP has been the only tenant of the Manufacturing Facility on the Burr Ridge property, held in the Land Trust.

105.   The Land Trust has a mortgage on the Burr Ridge Property under which monthly mortgage payments are due and a balloon payment is due on January 27, 2013.

106.   MPMP has always paid its monthly rent on time and has paid rent at an above market price, thereby, providing the beneficiaries of the Land Trust with a consistent, lucrative stream of rental income and debt servicing.

107.   MPMP's lease with the Land Trust for use of the Manufacturing Facility ended on May 15, 2010 and has since continued on a month-to-month basis.

108.   MPMP is ready, willing, and able to enter into a new lease with the Land Trust for the use of the Manufacturing Facility, and on or about February 22, 2012, MPMP tendered a draft lease to Janice and Jay, which they refused to even consider or provide legitimate reasons for rejecting.

109.   On or about February 8, 2012, solely to gain leverage on their personal claims against Tom and MPMP, Janice and Jay sent a letter to Tom indicating that they "will be listing the subject property with a real estate broker who will be seeking a new long-term tenant."

110.   Despite Tom's requests for information, in breach of their fiduciary duties Jay and Janice have refused to disclose to Tom any legitimate basis for refusing to enter into a new lease with MPMP or an evaluation of the cost to the Land Trust of releasing, because there are none.

111.   Instead of releasing the property to MPMP, for whom the building was built and who has for over 30 years timely paid rent, taxes, insurance and made certain repairs and

23

improvements on the property, Jay and Janice, solely to gain leverage on their personal claims against Tom and MPMP are breaching their fiduciary duties and causing harm to the Land Trust. Among other things, it is likely the property will remain vacant for a considerable period of time where no rents will be collected to pay the mortgage, taxes, insurance and maintenance on the property, all the to the determinant of the Land Trust. Moreover, even if a tenant can be found, the Land Trust will unnecessarily incur brokerage expenses, cost of improvements for a new tenant and the rents received will not be at the above market rates MPMP has paid over the past 30 years, all to the damage of the beneficial interests of the Land Trust.

112.    Janice and Jay's actions are in direct violation of their fiduciary duties as holders of the power of direction to act for the benefit of all holders of the beneficial interest in the Land Trust.

113.    Tom, as a holder of the beneficial interest in the Land Trust is damaged and will continue to be damaged as a result of the actions of Jay and Janice.

WHEREFORE Counterclaimants Thomas F. Meaden  and Meaden Precision Machined Products Company respectfully request that this Court grant judgment in their favor and against Counterdefendants Janice Meaden and John A. Meaden III and award damages and grant such other and further relief as this Court deems just and proper.

## COUNT VI – BREACH OF FIDUCIARY DUTIES AS SHAREHOLDERS OF MPMP AGAINST JANICE MEADEN AND JAY MEADEN

114.    Counterclaimants    incorporate    by    reference    paragraphs    1-50    of    their Counterclaims as if fully set forth herein.

115.    Janice and Jay are each minority shareholders of MPMP.

116.    As shareholders of MPMP, a closely held Illinois corporation, Janice and Jay owe fiduciary duties to MPMP and all other shareholders.

24

117.  Solely to leverage and pursue their personal claims interests, Janice and Jay have refused to negotiate a new lease with MPMP forcing MPMP to find and secure a new location to house its operations.  Securing a new location for a manufacturing business such as MPMP will be at a substantial cost to MPMP, will negatively impact the financial stability of MPMP, and will place the jobs of all of MPMP's employees at risk.

118.  Janice and Jay have breached their duties to MPMP by placing their individual interests above the interests of MPMP and the remaining shareholders of MPMP.

119.  As a result of Janice and Jay's actions, MPMP is damaged by being forced to expend substantial sums of money, greatly risking the stability of MPMP going forward, and other unforeseen damages that arise in the moving of MPMP's operations to a new location.

WHEREFORE, Counterclaimants Thomas F. Meaden and Meaden Precision Machined Products Company respectfully request that this Court grant judgment in their favor and against Counterdefendants Janice Meaden and John A. Meaden III and award damages and grant such other and further relief as this Court deems just and proper.

Dated: July 23, 2012

**THOMAS F. MEADEN and MEADEN
PRECISION MACHINED PRODUCTS
COMPANY, Defendants**

By: _/s/ Michael C. Bruck_____
        **Michael C. Bruck, Their Attorney**

Michael C. Bruck
Megan A. Rees

25

WILLIAMS MONTGOMERY & JOHN LTD.
Willis Tower
233 South Wacker Drive – Suite 6100
Chicago, Illinois  60606-6359
(312) 443-3200
#1072906