IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANICE MEADEN and John MEADEN III, ) <br> Residents of the State of California ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> THOMAS F. MEADEN, a Resident of the ) <br> State of Illinois, and MEADEN PRECISION ) <br> MACHINED PRODUCTS COMPANY, ) <br> and Illinois Corporation, ) <br> ) <br> Defendant. ) | No. 12 C 3534 <br><br> Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

Janice Meaden and John Meaden III ("plaintiffs") filed a two-count amended complaint against Thomas Meaden and Meaden Precision Machined Products Company ("defendants"), alleging breach of a stock redemption agreement. On July 30, 2012, defendants answered the complaint and filed a counterclaim for various declaratory judgments. Plaintiffs filed the instant motion to strike defendants' answers and affirmative defenses, and to dismiss defendants' counterclaim. For the reasons discussed below, the motion to strike is granted in part and denied in part, and the motion to dismiss defendants' counterclaim is denied.

**BACKGROUND**

This case involves a family dispute that arose after the death of the parties' father, John A. Meaden, Jr. ("John, Jr."), in 2009. The complaint alleges that the parties entered into a stock purchase agreement in 1989, which obligated defendants to purchase plaintiffs' shares of the family business, Meaden Precision Machined Products Company ("MPMP"). According to the plaintiffs, this purchase agreement was breached by the defendants.

Defendants have answered, alleging affirmative defenses and bringing a counterclaim of seven counts. The counterclaim includes defendants' side of the narrative and seeks to broaden the scope of the case by resolving other demands that plaintiffs have allegedly made of defendants in connection with John Jr.'s estate plan and the family business. Defendants allege that the estate plan included elements in addition to the stock purchase agreement, including: a land trust, a life insurance trust, irrevocable insurance trusts, and a number of gratuitous gifts detailed in an outline drafted by John Jr.'s attorney, Earnest Palmer ("the Ernie Outline"). Defendants contend that they are entitled to various declaratory judgments regarding these elements of the estate plan.

In Count I of the counterclaim, defendants claim that plaintiffs have waived any claim arising under the stock purchase agreement by rejecting a purchase offer made by defendants. In Count II, defendants seek a declaratory judgement that the irrevocable insurance trust agreements have been terminated, and that plaintiffs are barred from making any claims thereunder. According to defendants, John Jr., his wife, and defendant Thomas Meaden each established an irrevocable insurance trust in 1989. Each trust held a one-third interest in a universal life insurance policy for John, Jr. By late 1996, the universal life insurance policy allegedly became unaffordable and impractical, and defendant Thomas Meaden ceased making yearly gifts to his trust. In 2001, John Jr. and Mary stopped making gifts to their respective trusts and the policy was cashed in, with the plaintiffs receiving the proceeds. The respective shares of the three irrevocable insurance trusts were liquidated and disbursed to Janice in April 2002 and to John Meaden, III in March 2004.

In Counts III and IV, defendants allege that plaintiffs have made demands on defendant Thomas Meaden to make certain gifts described in the Ernie Outline. Count III seeks a declaratory judgment that the Ernie Outline is not an enforceable agreement, and Count IV seeks a declaratory judgment that defendant Thomas Meaden has not breached the Ernie Outline. The outline, drafted in 1989, is titled an "agreement" and contains fifteen clauses, many of which benefit plaintiffs. In Count III, defendants claim that the outline is a series of gratuitous promises made without consideration and is therefore unenforceable. Defendants further claim that plaintiffs have ratified defendants' conduct in relation to certain provisions of the Ernie Outline and have therefore waived any related claims. In Count IV, defendants again claim the agreement is unenforceable and that because certain events have rendered many of the gifts unwarranted, defendant Thomas Meaden cannot be in breach of the agreement.

Counts V and VI concern the land trust. The land trust involves property in Burr Ridge, Illinois, and the building in which MPMP is housed. The land and the building were placed in a land trust by John Jr. in the late 1970s, and John Jr.'s children and a number of grandchildren were named as the beneficiaries. In Count VI of the counterclaim, defendants claim that plaintiffs have breached their fiduciary duties as holders of the power of direction of the trust. Defendants also seek a declaratory judgment in Count V that plaintiffs have waived any claim against MPMP for rents and capital improvements made to the Burr Ridge property.

Count VII of the counterclaim alleges that plaintiffs are minority shareholders of MPMP, which is a closely held corporation. As such, defendants claim that plaintiffs owe fiduciary duties to the corporation and have breached those duties by refusing to negotiate a new lease with the company.

**DISCUSSION**

I.  **Motion to Strike Answer**

Fed.R.Civ.P. 12(f) permits a court to strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." Motions to strike under Rule 12(f) are not favored, however, and "[t]o strike allegations, they must be so unrelated to the party's claims as to be [de]void of merit and unworthy of any consideration." Robinson v. SABIS Educ. Sys., Inc., 2000 WL 343251, at *4 (N.D. Ill. March 31, 2000); see also Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir.1989); Safe Bed Technologies Co. v. KCI USA, Inc., 2003 WL 21183948, at *2 (N.D. Ill. May 20, 2003) ("Motions to strike under Rule 12(f) are generally not favored, and are usually denied unless the pleading's language is clearly prejudicial"); Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs., 2 F.Supp.2d 1028, 1033 (N.D. Ill.1998) ( "A movant bears the burden of demonstrating that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial.").

Plaintiffs claim that defendants' answer contains immaterial and impertinent material, specifically citing the answers to paragraphs 12 and 14. Those answers elaborate beyond a bare denial of the paragraph of the complaint and are not in the form approved by this district. See, e.g., State Farm Mut. Auto. Ins. Co. v. Riley, 199 F.R.D. 276, 280 (N.D. Ill. 2001). Nevertheless, the answers are not so egregious as to warrant being stricken. Plaintiff has not demonstrated that the "improperly placed defenses" included in those answers are so unrelated as to be "devoid of merit and unworthy of any consideration." The motion to strike defendants' answer is a waste of the court's and counsels' time, and is denied.

**II.     Motion to Strike Affirmative Defenses**

Plaintiffs also claim that the affirmative defenses raised by defendants are insufficiently pled and should be stricken. Motions to strike affirmative defenses are generally disfavored in this circuit because they are often employed for the sole purpose of causing delay. See Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989). Such motions will not be granted "unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense and are inferable from the pleadings." Williams v. Jader Fuel Co., Inc., 944 F.2d 1388, 1400 (7th Cir. 1991) (internal citations omitted). Yet, it is appropriate for the court to strike affirmative defenses that add unnecessary clutter to a case. See Household Financial Services, Inc. v. Northeastern Mortgage Inv. Corp., 2000 WL 816795, at *1 (N.D. Ill. June 22, 2000) (citing Heller, 883 F.2d at 1295).

Since affirmative defenses are subject to federal pleading requirements, a defense must set forth a "short and plain statement" of all the material elements; bare legal conclusions are insufficient. See Heller, 883 F.2d at 1294; Renalds v. S.R.G. Restaurant Group, 119 F.Supp.2d 800, 802 (N.D. Ill.2000); Fed.R.Civ.P. 8(a). A three-part test is applied to affirmative defenses subject to a motion to strike:

> (1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge-in other words, if it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter must be stricken as legally insufficient.

Renalds, 119 F.Supp.2d at 802–03 (citing Heller, 883 F.2d at 1294).

Plaintiff alleges the first affirmative defense is improper because it combines five affirmative defenses[1] in one list. Courts have routinely held that simply listing legal defenses is inappropriate. See, e.g., State Farm Mut. Auto. Ins. Co. v. Riley, 199 F.R.D. 276, 279 (N.D.Ill.2001). Although defendants have provided supporting facts, those facts do not plead the specific elements required to establish all five equitable defenses. See, e.g., Fluor Corp. v. Ill. Power Co., 326 F.2d 374, 377-78 (7th Cir.1964). Affirmative defenses "must include either direct or inferential allegations respecting all material elements of the defense asserted." Yash Raj Films (USA) Inc. v. Atl. Video, 03 C 7069, 2004 WL 1200184 (N.D. Ill. May 28, 2004). For example, to survive a motion to strike an estoppel claim under Illinois law, the defendant must allege at least that: 1) the other party acted; 2) the defendant reasonably relied on the act; and 3) the defendant changed its position for the worse based on that reliance. Bobbit v. Victorian House, Inc., 532 F.Supp. 734, 738 (N.D. Ill.1982). A laches defense in Illinois requires an allegation that the plaintiff's delay in filing suit caused some harm to the defendant. Id. at 739. The first affirmative defense is therefore dismissed because it fails to provide the necessary allegations for each of the defenses claimed.

Plaintiff alleges that the second and third affirmative defenses are insufficient because they fail to plead any legal standard, elements, and/or requisite facts to support the claims. The second affirmative defense claims that plaintiffs are not entitled to recover interest on the value of their shares. In support of this claim, defendants allege that plaintiffs previously refused to

---

[1]These defenses are "the doctrine of unclean hands, inequitable conduct, waiver, estoppel and/or laches."

sell their shares. The second affirmative defense thus meets the Rule 8(a) short and plain statement standard and is sufficient as a matter of law.

The third affirmative defense merely states that plaintiffs' claims are barred by the statute of limitations. Defendants fail to state the statute of limitations period to which they refer and do not give any other information as to how the statute of limitations bars the plaintiffs' claims. Because the third affirmative defense is a bare legal conclusion, it is insufficient as a matter of law. The court therefore grants the plaintiffs' motion to strike affirmative defenses one and three without prejudice, and denies the motion with regard to the second affirmative defense.

## III. Motion to Dismiss Counterclaim

When ruling on a motion to dismiss for failure to state a claim, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir.2004). The pleading must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which the claims rest. The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964–73, 167 L.Ed.2d 929 (2007).

Many of the claims raised by defendants seek declaratory judgment. The Declaratory Judgment Act provides the court discretion, in any "case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. To seek a declaration of rights, a party must demonstrate "a substantial controversy, between parties

having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." Boler v. Raydan Mfg., Inc., 415 F. Supp. 2d 896, 901 (N.D. Ill. 2006). If a declaratory judgment "will clarify and settle the legal relations at issue and afford parties relief from insecurity and uncertainty, the declaratory judgment action is usually heard." Intervisual Communications, Inc. v. Volkert, 975 F. Supp. 1092, 1099 (N.D. Ill. 1997).

### A. Counts One Through Five

Plaintiffs seek to dismiss counts one through five of defendants' counterclaim on the basis that these counts "involve neither a substantial controversy nor a controversy of sufficient immediacy to warrant the issuance of a declaratory judgment." As stated above, these counts concern a request for declaratory judgments regarding claims arising from the stock purchase agreement, the irrevocable insurance trusts established in connection with John Jr.'s estate, the land trust, and the Ernie Outline.

Plaintiffs contest the propriety of declaratory judgments on these counts because they allege that defendants are seeking exoneration for past conduct, rather than the resolution of a pending controversy. Yet, for each of these counts defendants have alleged that plaintiffs have made demands of defendants regarding these elements of John Jr.'s estate plan. Count I in particular is related to the stock purchase agreement, which is the basis for plaintiffs' complaint. Plaintiffs can hardly contend that there is no substantial controversy regarding the stock purchase agreement when it is the crux of their case. Although the plaintiffs' rejection of the defendants' offer allegedly took place on March 8, 2012, the question of whether the contract was breached is in controversy. Further, based on the court's reading of the documents filed in this matter, the demands and controversies described in Counts II through V are ongoing. It is these demands

that generate the "substantial controversy," and not merely the past conduct by defendants that plaintiffs describe in their briefs.

Plaintiffs also allege that the court should abstain from exercising jurisdiction over Count V because it involves defenses to a suit in the DuPage County Circuit Court. Plaintiffs state that but for the interjection of this counterclaim, there would not be a common core of operative facts.

Fed.R.Civ.P. 13(a)(1) states that "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." An exception exists if "when the action was commenced, the claim was the subject of another pending action." The state court action was filed in July 2012, after this action was commenced in federal court. The exception therefore does not apply.

Courts usually interpret the meaning of the phrase "transaction or occurrence" liberally to further the policies of the Federal Rules in general, and Rule 13(a) in particular. See Warshawsky & Co. v. Arcata National Corp., 552 F.2d 1257, 1261 (7th Cir. 1977); 6 Wright, Miller & Kane, Federal Practice & Procedure 50 (2d ed.1990). The most accepted method for determining whether a claim arises out of the same transaction or occurrence as the first claim is the logical relationship test: whether the subject matter of the two claims are logically related. See Colonial Penn Life Insurance Co. v. Hallmark Insurance Administrators, Inc., 31 F.3d 445, 448 (7th Cir.1994); Burlington Northern Railroad Co. v. Strong, 907 F.2d 707, 711 (7th Cir.1990); 6 Wright, Miller & Kane 58. The purpose of Rule 13(a) is to prevent multiplicity of actions and to resolve all disputes arising out of common matters in a single lawsuit. Southern

9

Construction Co. v. Pickard, 371 U.S. 57, 60, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962); Warshawsky & Co., 552 F.2d at 1261.

In Burlington, the Seventh Circuit acknowledged the flexibility of the term "transaction," noting that it could encompass a series of many occurrences which may not necessarily be immediately connected. 907 F.2d at 711. At the same time, it warned that the facts of each case should be given careful consideration before a determination is made:

> In short, there is no formalistic test to determine whether suits are logically related. A court should consider the totality of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds. Id.

In the instant case, Count V of the counterclaim and the issue detailed in plaintiffs' complaint arise out of the same transaction or occurrence. The conflict between the parties has arisen out of the estate plan of their late father and the claims are logically related. Plaintiffs' argument that the court should abstain from exercising jurisdiction is therefore unavailing.

### B. Counts Six and Seven

The sixth and seventh counts of defendants' counterclaim involve the fiduciary duties that plaintiffs owe as holders of power of direction of the Land Trust and as minority shareholders in MPMP. Plaintiffs admit that they owe fiduciary duties to both the trust and the company. As fiduciaries of the trust, plaintiffs are subject to the fiduciary duties imposed by law on all trustees, including duties of loyalty. Home Federal Sav. & Loan Ass'n v. Zarkin, 89 Ill.2d 232, 59 Ill.Dec. 897, 432 N.E.2d 841 (1982).[2] With regard to the duties to the land trust,

---

[2] While Zarkin was superseded by a statutory amendment, the holdings regarding fiduciary duties and self-dealing have not been overruled. See Slovick v. All American Bank of Chicago, 163 Ill. App.3d 741, 114 Ill. Dec. 792, 516 N.E.2d 947, 950 (1st Dist.1987).

plaintiffs basically claim that, because the land trust allows for majority rule, majority rule governs.

Under the Illinois Land Trust Fiduciary Duties Act, 765 ILCS 435/1 et seq., the holders of the power of direction are "presumed to act in a fiduciary capacity for the benefit of all holders of the beneficial interest in the trust, unless otherwise provided in the land trust agreement."[3] Under Illinois law, a plaintiff may recover for breach of fiduciary duty where: "(1) a fiduciary duty exists on defendant's part; (2) the defendant breached that fiduciary duty; and (3) damages proximately resulted from the breach." Pope v. Smith-Rothchild Financial Co., 2003 WL 21994023, at *2 (N.D. Ill. Aug.21, 2003) (citation omitted). Defendants have adequately pled that a fiduciary relationship existed, that plaintiffs breached those duties by failing to act for the benefit of the beneficiaries, and that a detriment resulted. Therefore, the court denies plaintiffs' motion to dismiss Count VI..

Plaintiffs assert the same argument in support of their motion to dismiss the seventh count: because of majority rule, they are not subject to claims of breach of fiduciary duty to shareholders of MPMP. As plaintiffs' brief concedes, actions by shareholders that are intended to be detrimental to the company are a breach of the duty of loyalty. In the counterclaim, defendants have adequately pled the existence of a duty, the breach of that duty, and a resulting harm. The motion to dismiss Count VII is denied.

## **CONCLUSION**

---

[3] Plaintiff may be alluding to the "majority rule" clause as the language which exempts the holders from fiduciary duties, which they may assert as a defense, but raising a defense to the counterclaim does not defeat a well-pleaded claim.

For the reasons described above, plaintiffs' motion to strike defendants' answer is denied. The motion to strike defendants' first and third affirmative defenses is granted, and the motion to strike defendants' second affirmative defense is denied. The motion to dismiss defendants' counterclaim is denied. Plaintiff is directed to answer the counterclaim on or before December 24, 2012. The parties are directed to prepare and file a Joint Status Report using this court's form on or before December 31, 2012.

**ENTER:** **November 30, 2012**

_____
**Robert W. Gettleman**
**United States District Judge**